UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERSADA COBOVIC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARS PETCARE US, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mersada Cobovic ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Mars Petcare US, Inc. ("Mars" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and/or sells multiple types of pet food (the "Products")[1] throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner by misrepresenting that many of its products are "natural" (the "Products").

2. Defendant clearly claims the Products are "natural" on the Products' label, capitalizing on the preference of health-conscious pet owners to purchase pet food that is free from synthetic ingredients. However, this representation is false and/or misleading because the Products contain multiple synthetic ingredients including but not limited to xanthan gum,

---

[1] The Products encompass all of Defendant's products that are marketed as "natural," but contain synthetic ingredients.

1

thiamine mononitrate, zinc sulfate, copper sulfate, pyridoxine hydrochloride, and menadione sodium bisulfite complex.

3.      As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

4.      Plaintiff purchased Defendant's Products and, on behalf of herself and similarly situated purchasers, asserts claims for violations of New York General Business Law §§ 349 and 350, and for breach of express warranty.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff Mersada Cobovic is a citizen of New York who resides in Staten Island, New York.  Ms. Cobovic has purchased the Products for personal use at various times during the applicable statute of limitations.  For example, in or around October 2023, Ms. Cobovic purchased NUTRO Grain Free Natural Wet Cat Food Cuts in Gravy Turkey Recipe from Amazon.com, which shipped the Product to her home in Staten Island, New York.  In purchasing the Product, Ms. Cobovic relied on Defendant's false, misleading, and deceptive marketing of

the Product as "natural." Ms. Cobovic understood that "natural" meant that the Product did not contain any synthetic ingredients, but in fact, the Product she purchased did contain multiple synthetic ingredients, including xanthan gum, thiamine mononitrate, zinc sulfate, copper sulfate, pyridoxine hydrochloride, and menadione sodium bisulfite complex. Had Ms. Cobovic known that Defendant's "natural" representation was false and misleading, she would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

9. Defendant Mars Petcare US, Inc. is a Delaware corporation with its principal place of business in Franklin, Tennessee.

10. Defendant advertises, markets, manufactures, distributes, and sells the Products throughout the United States, including in the State of New York. Defendant manufactured, marketed, and sold the Products during the Class Period.

## GENERAL ALLEGATIONS

11. Defendant's labeling on the Products states that the Products are "natural."





12. The Products are sold in a variety of outlets, including Chewy.com, Amazon.com, Petco.com, and various other supermarkets and grocery stores.

13. Defendant's labeling and advertising puts forth a straightforward, material message: the Products contain only ingredients that are natural. Reasonable consumers would understand Defendant's labeling to mean that the Products contain only natural ingredients, and not any synthetic substances.

14. Although Defendant includes "Plus Vitamins, Minerals and other nutrients," to its labeling, an ordinary person would understand Defendant's claim to mean that the added vitamins, minerals and other nutrients are natural as well. Because the labeling claim does not specify that the added vitamins and minerals are synthetic, a reasonable consumer would expect that the added vitamins, minerals and other nutrients are natural as well. Regardless, some of the synthetic ingredients in the Products are not vitamins or minerals (such as xanthan gum), and so

4

this phrase does nothing to detract from the falsity of Defendant's misrepresentations.

15.     Defendant makes natural claims in an effort to capitalize on the growing market for natural products. Health-conscious pet owners are willing to pay a price premium for products labeled and advertised as natural, believing Defendant's misrepresentations that the Products are natural and, accordingly, better and safer for their pet friends to consume than other non-natural products.

16.     But the Products cannot be considered "natural" because they contain synthetic ingredients. Specifically, Defendant's Products contain the following non-exhaustive list of synthetic ingredients:

(a) **Zinc sulfate**. Zinc sulfate, according to the FDA, is a synthetic substance. 7 C.F.R. § 205.603(b)(11).

(b) **Copper sulfate**. Copper sulfate is a toxic, inorganic compound "that has been registered for use in pesticide products in the United States since 1956." 7 C.F.R. § 205.603(b)(1).[2] The copper sulfate used in Defendant's Products is not "natural" but instead is manufactured by adding copper to sulfate.

(c) **Thiamine mononitrate.** Thiamine mononitrate is a synthetic stable nitrate salt that is chemically and structurally different from natural thiamine, and the changes required to transform thiamine to thiamine mononitrate do not result from a natural process.

(d) **Pyridoxine hydrochloride.** Pyridoxine hydrochloride is synthetically created by treating pyridoxine with hydrochloride acid to form a salt compound.

(e) **Xanthan Gum.** Xanthan gum is a thickening agent that, according to FDA

---

[2] National Pesticide Information Center http://npic.orst.edu/factsheets/cuso4gen.html (last accessed November 4, 2024).

regulations, is a synthetic substance. 7 C.F.R. § 205.605(b)(37). Xanthan gum is not "natural" but instead manufactured through fermentation or carbohydrates and subsequent treatment of the byproduct with isopropyl alcohol.

(f) *Menadione sodium bisulfate complex.* This is also known as vitamin K3, the synthetic analogue of vitamin K.

17. No product labeled "natural" should contain any of these ingredients. And yet, the Products contain them.

18. Defendant has profited enormously from its false and misleading representation that the Products contain only natural products. The purpose of this action is to require Defendant to change its labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

19. Plaintiff seeks to represent a class defined as all persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for personal, family, or household consumption, and not for resale (the "Nationwide Class").

20. Plaintiff also seeks to represent a subclass defined as all Class members who purchased the Products in New York (the "New York Subclass") (collectively with the Nationwide Class, the "Classes").

21. **Numerosity Fed. R. Civ. P. 23(a)(1).** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).**
There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

(a) the true nature and presence of synthetic ingredients in the Products;

(b) whether Defendant's marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading;

(c) whether Plaintiff and members of the Classes have suffered damages as a result of Defendant's actions, and the amount thereof;

(d) whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes; and

(e) whether Plaintiff and members of the Classes are entitled to attorneys' fees and costs.

23. **Typicality (Fed. R. Civ. P. 23(a)(3)).** The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

24. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

25. **Superiority (Fed. R. Civ. P. 23(b)(3)).** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Even if every member of the Classes could afford to pursue individual litigation, the court system could

not. Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

26. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

27. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

28. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

29. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

30. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

31. Defendant made false and misleading statements by marketing the Products as "natural" when the Products in fact contained synthetic ingredients.

32. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

33. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

34. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

35. Defendant's actions set forth above occurred in the conduct of trade or commerce.

36. The foregoing deceptive acts and practices were directed at consumers.

37. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

38. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (completely "natural") and the Products as actually sold (containing one or more synthetic ingredients).

39. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

40. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

41. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

42. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

43. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as "natural" when in fact the Products contain synthetic ingredients.

44. Plaintiff understood Defendant's misrepresentations to mean that the Products in fact were "natural" and contained no synthetic ingredients as reasonable consumers understand the term.

45. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

46. This misrepresentation has resulted in consumer injury or harm to the public interest.

47. As a result of this misrepresentation, Plaintiff and New York Subclass members

have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.  As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (completely "natural") and the Products as actually sold (containing one or more synthetic ingredients).

48. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III

### Breach of Express Warranty
### (On behalf of the Nationwide Class and the New York Subclass)

49. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

51. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products have only "natural" ingredients.

52. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

53. However, the Products do not conform to Defendant's representations and

warranties because the Products contain multiple synthetic ingredients. By falsely representing the Products in this way, Defendant breached express warranties.

54. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiff and members of the Classes known the Products were not in fact "natural," they would not have purchased the Products, or would have paid substantially less for them.

55. Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Nationwide Class and the New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 5, 2024  **BURSOR & FISHER, P.A.**

By: */s/ Joshua D. Arisohn*
　　　Joshua D. Arisohn

Joshua D. Arisohn
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
　　　　jdiamond@bursor.com

*Attorneys for Plaintiff*